UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES M. BINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-00211-TWP-DKL |
| | ) |
| RAYTHEON TECHNICAL SERVICES CO., LLC, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Raytheon Technical Services Co., LLC ("Raytheon") (Filing No. 44). Plaintiff Charles Bingham ("Mr. Bingham") brings claims against Raytheon alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"), claiming that he was terminated on the basis of his age.[1] For the reasons set forth below, the Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

Mr. Bingham, who was sixty-three years old on the date of his termination, began working for Raytheon on August 26, 1981, at the former Indianapolis Navy facility. In 1990, he began working in logistics on the EP-3 "spy plane" program, and in 2001 Mr. Bingham became the lead logistician on the program. In this role, Mr. Bingham was responsible for the overall logistics on the airplane, whereas other logistics specialists were responsible for logistics on particular pieces of the airplane. The EP-3 program wound down in 2010, and Mr. Bingham began providing logistics support for a Training Frequency Relocater program and performed work for another airplane, the V-22.

---

[1] Mr. Bingham also originally asserted claims under the Americans with Disabilities Act and the Fair Labor Standards Act. Those claims were voluntarily dismissed with prejudice on January 24, 2014 (Filing No. 35).

In 2011, Leo DeCardenas, the Logistics Director, reorganized Raytheon's logistics division. One of the purposes was to align the business functionally, instead of regionally, and to group employees regardless of geography. As of January 2011, Mr. Bingham was a Senior Engineering Logistics Specialist II in the LMI section of the Front End Logistics Department of the Logistics Design Center. He and two other employees in Indianapolis, Indiana, Frank Nicola ("Mr. Nicola") and David Blessing ("Mr. Blessing"), provided LMI support, primarily to programs managed out of Indianapolis. However, it was not uncommon for a logistics specialist assigned to one supervisor to work in another area under a different supervisor. Susanna Oh ("Ms. Oh") was located in El Segundo, California, and became Mr. Bingham's immediate supervisor in September 2011. Ms. Oh also supervised employees located in Alabama, Utah, New Mexico, and Massachusetts.

After Ms. Oh became Mr. Bingham's supervisor in September 2011, she began assigning him mostly non-billable "crossover" work. Crossover work is work that is not billable to a client and is overhead for Raytheon. In contrast, direct charge work is work that can be charged to contracts order numbers and generates revenue for Raytheon. From September 2011 through January 2012, Mr. Bingham charged between 69% and 84% of his hours to crossover work. Mr. Blessing and Mr. Nicola were fully-loaded with direct, billable work, supporting two long-term projects in Indianapolis. Because of the reduced workload, and to reduce overhead costs, the Logistics Design Center management decided to reduce the head count in LMI by one employee.

Raytheon has a reduction in force ("RIF") process for selecting employees for layoff from an impacted group, which it uses for layoffs of all sizes, from one employee to hundreds of employees. Rather than simply terminate the employee or employees who lack work, the RIF process is used to make fair decisions and to ensure Raytheon maintains the best possible

workforce to meet current and projected business requirements. Once the need for a RIF is determined, management of the applicable business unit works with Human Resources to implement the RIF. Management initially identifies the applicable decisional unit of employees who will be ranked for selection purposes, which generally includes all similarly situated employees in the work area or job function to be affected by the RIF. The decisional unit is not to span more than three salary grade levels, and should include all similarly situated employees based on job function, skills, responsibilities, compensation, and job classification. Decisional units may also be comprised of employees from multiple locations if the work they are performing is "virtual" in nature, *i.e.* is not location specific. Management ranks employees based upon current performance, job knowledge/skills, flexibility/initiative, and years of service. The numeric rank is determined by the number of people in the decisional unit, and the employees are evaluated for RIF based upon their overall rankings.

Floyd Horton ("Mr. Horton"), manager of the Front End Logistics Department of the Logistics Design Center, and Ms. Oh determined that the RIF decisional unit should consist of Mr. Bingham, Mr. Blessing, and Mr. Nicola. Mr. Bingham was ranked third in the decisional unit and was terminated. In the decisional unit form, Raytheon justified Mr. Bingham's termination by citing lack of specialty skills that the other two employees possessed, including expertise in PHS&T process (packaging, handling, storage, and transportation), hands-on LMI experience, and skills and experience using the EAGLE database. However, Mr. Bingham was informed that he was being terminated due to his lack of billable work. Mr. Bingham was not replaced following his termination. Additional facts will be addressed below as necessary.

3

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

Mr. Bingham alleges that he was terminated because of his age in violation of the ADEA. Specifically, he argues that he was selected for termination under the RIF in favor of younger employees in his division that were retained. The ADEA prohibits employers from engaging in discrimination "because of [an] individual's age." 29 U.S.C. § 623(a)(1). This prohibition is

"limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). To succeed under the ADEA, a plaintiff must establish that the employer's adverse decision would not have occurred "but for [the] employer's intentional age-based discrimination." *Chiaramonte*, 129 F.3d at 396. A plaintiff can prove age discrimination through either the direct or the indirect methods of proof. *Id.* The indirect, burden-shifting method in an ordinary ADEA case requires that the plaintiff show (1) he is a member of a protected class; (2) his performance was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected class. *Martino v. MCI Commc'ns Svcs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009).

However, in cases involving a RIF termination, the Seventh Circuit has slightly reformulated the fourth element of the plaintiff's *prima facie* case. Rather than having to show that an employee outside of the protected class was treated more favorably, *i.e.* an employee under the age of forty, the plaintiff need only show that a substantially younger similarly situated employee was treated more favorably. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000); *see also Roper v. Peabody Coal Co.*, 47 F.3d 925, 926-27 (7th Cir. 1995) ("[T]he ADEA protects older employees from discrimination on the basis of age, not just discrimination in favor of persons under the age of forty."). Once the plaintiff states his *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging him. *Roper*, 47 F.3d. at 926. The burden then shifts back to the plaintiff to present evidence that the proffered reasons are pretext for discrimination, including that the employer's decision to terminate plaintiff more likely than not was motivated by discriminatory reasons or that the proffered explanations are unworthy of credence. *Id.*; *Oxman v. WLS-TV*, 846 F.2d 448, 453 (7th Cir. 1988). One such way of proving this in the RIF context is to show that the decision to

terminate one employee in particular on an impermissible basis was characterized as a RIF in order to avoid liability. *See Bellaver v. Quanex Corp./Nichols-Homeshield*, 200 F.3d 485, 494 (7th Cir. 2000).

As with the majority of discrimination cases, Mr. Bingham has not presented direct evidence of discrimination, nor has he presented any circumstantial evidence under the direct method; therefore, his case must be analyzed under the indirect burden-shifting method. The parties do not dispute that Mr. Bingham can satisfy the first three elements of his *prima facie* case: he was sixty-three years old at the time of his termination, his performance was meeting legitimate employment expectations, and he was terminated. Raytheon argues that Mr. Bingham cannot show that substantially younger similarly situated employees were treated more favorably because the other two individuals in the decisional unit were sixty-four and sixty years old.[2] Mr. Bingham argues that Raytheon did not follow its RIF procedures properly, resulting in a termination reason that was pretext for discrimination on the basis of his age.

The issues of whether a similarly situated younger employee was treated more favorably and whether Mr. Bingham's termination under a RIF was pretext for discrimination are intertwined in this case; thus, the Court will analyze them together. Mr. Bingham's argument is that younger employees who should have been included in the decisional unit were not considered in the RIF, thus comparing him to and terminating him in favor of two employees similar in age results in younger employees being favored, and shows pretext for age discrimination. Raytheon argues that it limited the decisional unit to Mr. Bingham, Mr. Nicola, and Mr. Blessing because they were all located in Indianapolis, and the Indianapolis LMI division was incurring the greatest amount of

---

[2] The Seventh Circuit has warned against relying upon "felicitous birth order" to support an inference of age discrimination. *Roper*, 47 F.3d at 927. By way of example, "[p]reference for a 74 –year-old job applicant over at 75-year-old is unlikely to suffice in establishing a *prima facie* case." *Id.*

overhead because Mr. Bingham was primarily doing non-billable work. Raytheon also argues that the decisional unit was properly limited to Indianapolis because logistics work is highly dependent on being co-located with programs.

However, Mr. Bingham has presented conflicting evidence showing that logistics work was often assigned across geographic areas after the 2011 department reorganization and was not limited to specific geographic areas. In a letter to the TS Engineering Leaders, Raytheon's Vice President of Engineering, Technology and Field Operations explained, "we will restructure the organization to become disciplined-based versus the current regional model." (Filing No. 48-15, at ECF p. 1). Patricia Doyle ("Ms. Doyle"),[3] the Principal Human Resources Generalist at Raytheon supporting the Logistics Engineering organization, testified in her deposition that "the purpose of that 2011 [reorganization] was to align the employees based on the function and the services they provided, regardless of geography." Doyle Dep. 98:1-15 (Filing No. 48-34, at ECF p. 23). Mr. Bingham's own supervisor, Ms. Oh, was not located in Indianapolis, Indiana; rather, she and two other employees that Mr. Bingham frequently worked with were located in El Segundo, California, and he worked with them via telephone. While Raytheon argues that Mr. Bingham could not have assumed the work of the other two individuals located in Indianapolis, in viewing the facts most favorable to Mr. Bingham it would be reasonable to conclude that he could have assumed the work duties of an employee in a different geographic area under Ms. Oh's supervision, particularly considering his over thirty years of experience with the company. Additionally, Raytheon's RIF procedures do not account for location in determining similarly situated employees to be included in the decisional unit (Filing No. 48-9, at ECF p. 6). This raises a question of material fact as to whether the decisional unit was properly limited to Indianapolis,

---

[3] Ms. Doyle is also referred to as Tricia Doyle in the briefs and the evidence.

thus excluding other similarly situated employees who may have been significantly younger than Mr. Bingham.

The fact that work was not assigned geographically in the logistics department also calls into question the uneven distribution of crossover work to Mr. Bingham. Mr. Bingham has presented evidence that he began to be assigned primarily crossover work in September 2011 when Ms. Oh became his supervisor, even though this work could have been assigned to any number of employees that she supervised across the country. Raytheon argues that Mr. Bingham was unable to find billable work, thus justifying his termination due to low workload, but it was Ms. Oh's job to find and assign billable work to her subordinates, not Mr. Bingham's. Oh. Dep. 30:20 – 32:4 (Filing No. 46-13, at ECF p. 8). Additionally, Mr. Bingham presented evidence showing a dispute of fact regarding the actual workload levels of the logistics department. *See* Filing No. 48-20, at ECF p. 1 (review of Kenneth Coffman, manager in charge of the Logistics Design Center, stating that he was responsible for "maintaining and growing" the Logistics Design Center following reorganization in 2011). Viewing these facts most favorably to Mr. Bingham, a reasonable jury could find that Ms. Oh disproportionately assigned crossover work to Mr. Bingham in order to later justify his termination, while favoring younger employees by assigning them billable work.

Mr. Bingham has shown that there are questions of material fact regarding whether Raytheon followed its own RIF procedures in making its decision to terminate Mr. Bingham, thus raising an issue as to whether Raytheon's proffered reason is pretextual. The Seventh Circuit has held that an employer's failure to follow its own internal employment procedures can constitute evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005). Ms. Doyle testified in her deposition that identification of the employees to be placed in the decisional unit "absolutely" must occur prior to the decision to terminate a particular employee is made.

Doyle Dep. 93:14 – 94:6 ([Filing No. 48-34, at ECF p. 22](#)).  According to Ms. Doyle, Mr. Bingham was identified for termination prior to Ms. Oh putting together the decisional unit.  Doyle Dep. 19:2-24 ([Filing No. 48-34, at ECF p. 5](#)).  In addition, e-mails among Logistics Design Center management referred to discussing Mr. Bingham with Ms. Doyle in the Human Resources department due to his low workload, and inquiring whether Mr. Horton was "preparing the decisional unit for the unit that Charlie works in." ([Filing No. 48-12](#)).  From these facts, a reasonable jury could infer that Mr. Bingham was selected for termination prior to the identification of the decisional unit and that a decisional unit was designed around him to justify his termination.  Because there are questions of material fact as to whether Raytheon followed its established procedures for terminating employees under a RIF, the Court finds that a reasonable jury could infer that the proffered reason for Mr. Bingham's termination was pretext for discrimination.

In viewing the facts most favorable to Mr. Bingham, the Court concludes that he has shown that there are questions of material fact as to whether similarly situated younger employees were excluded from the RIF decisional unit and therefore not subject to termination, thus satisfying the fourth element of Mr. Bingham's *prima facie* case.  The Court further finds that Mr. Bingham has shown that there are questions of material fact as to whether the proffered reason for his termination was worthy of credence from which a reasonable jury could infer pretext.  Because Mr. Bingham has met his burden, summary judgment in favor of Raytheon is not appropriate.

### IV.  CONCLUSION

For the forgoing reasons, the Court finds that there are questions of material fact as to whether Mr. Bingham was terminated because of his age, and whether the proffered reasons for

his termination were pretext for discrimination. Therefore, Raytheon's Motion for Summary Judgment ([Filing No. 44](#)) is **DENIED**.

 **SO ORDERED.**

Date: 10/31/2014

DISTRIBUTION:

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Amanda C. Couture
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
amanda.couture@ogletreedeakins.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana